# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

JOHN WHITE,

                             Plaintiff,

                                           9:14-CV-1400
               v.                                        (LEK/ATB)

DONALD UHLER, et al.,

                             Defendants.

---

JOHN WHITE, Plaintiff, pro se
KEITH J. STARLIN, Asst. Attorney General for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER & REPORT-RECOMMENDATION

      This matter has been referred to me for Report and Recommendation by the

Honorable Lawrence E. Kahn, Senior United States District Judge.  In this civil rights

action, plaintiff alleges that, on several occasions between June 2013 and November

2014, multiple staff and officials at Upstate Correctional Facility ("Upstate") violated

his Eighth Amendment rights by using excessive force, encouraging other inmates to

attack or fight plaintiff, and housing plaintiff with other inmates who had gang

affiliations despite plaintiff's repeated requests for protective custody. (Dkt. No. 1,

Compl.).  On April 14, 2015, Judge Kahn dismissed a number of plaintiff's other

claims. (Dkt. No. 14).  A total of nineteen defendants remain in this action.

      Presently before the court is the remaining defendants' motion for summary

judgment pursuant to Fed. R. Civ. P. 56. (Dkt. Nos. 169, 170).  Plaintiff has responded

in opposition to the motion, and defendants filed a reply memorandum of law. (Dkt.

Nos. 192, 193, 194, 197).  For the following reasons, this court will recommend granting the motion for summary judgment as to all defendants and dismissing plaintiff's complaint in its entirety.

In his response to defendants' motion, plaintiff has moved for additional discovery pursuant to Fed. R. Civ. P. 56(f).  Specifically, plaintiff requests information on the background and gang affiliation of prior cellmates. (Dkt. No. 192-2, "Pl.'s Mem. of Law", at 74, ¶ 18).  There is a four-part test for determining the sufficiency of a request for additional discovery in order to respond to a summary judgment motion. Plaintiff must submit an affidavit that includes (1) the nature of the uncompleted discovery; (2) how the facts sought are reasonably expected to create a genuine issue of material fact; (3) what efforts the party has made to obtain those facts: and (4) why those efforts were unsuccessful.  *See Walker v. Kubicz*, 996 F. Supp. 336, 342 (S.D.N.Y. 1998) (citing *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)).  Beyond the bare request made in his responsive memorandum of law, plaintiff has not offered any information related to those four factors.  In addition, the requested discovery, which may go to the merits of particular claims, is not necessary to address the issues of exhaustion and personal involvement raised in defendants' motion for summary judgment.  Accordingly, plaintiff's request for additional discovery is denied.

## I. __Summary Judgment__

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir.

2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## II.   <u>Compliance with Local Rules</u>

As required under L.R. 7.1, defendants have filed a Statement of Material Facts. (Dkt. No. 169-1). Although plaintiff has responded to the Statement of Material Facts filed by Defendants (Dkt. No. 192-1, "Pl.'s Counter Statement of Material Facts"), his response does not follow the mandate of L.R. 7.1(a)(3). Under this rule, the opposing

3

party's response to the movant's statement of material facts "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises." Instead, plaintiff has submitted a counter-statement of material facts that does not correspond to the defendants' statement, and instead raises a variety of legal arguments.

Where, as in this case, a party has failed to respond to the movant's statement of material facts in the manner required under L.R. 7.1(a)(3), the local rule provides that facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, and (2) the nonmovant, if proceeding pro se, has been specifically advised of the possible consequences of failing to respond to the motion. *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). However, the Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that "while a court is not required to consider what the parties fail to point out in their [local rule statements of material facts], it may in its discretion opt to conduct an assiduous review of the entire record even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and internal quotation marks omitted).

In addition, plaintiff has ignored the page limitations found in L.R. 7.1(a)(1) by submitting a 110 page memorandum of law in response to defendants' motion, without leave of court. (Dkt. 192-2). Defendants note that plaintiff has filed at least sixteen

federal lawsuits, with accompanying motion practice. (Dkt. No. 170-1, "Starlin Decl." ¶¶ 6-9). Based on plaintiff's experience with the procedural requirements of federal court, defendants argue that the court should not afford him the "special solicitude" that typically accompanies pro se pleadings. (Starlin Decl. ¶ 10).

When a court considers whether to withdraw a pro se litigant's special status, it should consider not only that litigant's lifetime participation in all forms of civil litigation, but also his experience with the particular procedural setting presented. *See Sledge v. Kooi*, 564 F.3d 105, 109 (2d Cir. 2009). The Second Circuit has advised that courts "would do well to limit the withdrawal of special status to specific contexts in which the litigant's experience indicates that he may be fairly deemed knowledgeable and experienced."

Plaintiff in this case has filed numerous pro se federal lawsuits in the past few years, and he has engaged in significant motion practice, including responses to summary judgment motions. *See, e.g., White v. Rock*, No. 9:13-CV-392 (GTS/CFH), 2016 WL 1248904, at *1 (N.D.N.Y. March 29, 2016); *White v. Williams,* No. 9:12-CV-1892 (GLS/ATB), 2016 WL 1239263. at *1 (N.D.N.Y. Mar. 29, 2016); *White v. Clark*, No. 9:12-CV-986 (NAM/DJS), 2016 WL 1266957, at *1 (N.D.N.Y. March 31, 2016); *White v. Williams*, No. 9:12-CV-1775 (NAM/DJS); 2016 WL 4005849, at *1 (N.D.N.Y. July 25, 2016). This would suggest that plaintiff has greater familiarity with the procedural requirements than the typical pro se litigant. However, this court, in its discretion, will not withhold the leniency typically afforded pro se litigants at this juncture. Therefore, this order and report-recommendation is based upon an assidous

review of the entire summary judgment record, including plaintiff's memorandum of law, his supporting affirmation, and the accompanying exhibits.

Plaintiff should not interpret this court's leniency with respect to this motion as approval of his disregard for the applicable local rules. This court reminds plaintiff that his pro se status is not a license to avoid the procedural requirements imposed on all civil litigants, including page limitations. *See Sheils v. Brannen*, No. 9:05-CV-135 (LEK/GHL), 2008 WL 4371776, at *3 (N.D.N.Y. Sept. 18, 2008); *see also Faretta v. Calif.,* 422 U.S. 806, 834 n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law.). Future pleadings that disregard the local rules may not be afforded this same leniency.

## III.   **Relevant Facts**

Plaintiff was confined at Upstate from January 2009 to July 2015.[1] (Dkt. No. 169-11, "Dominic Decl." ¶ 2). As summarized below, plaintiff raised a number of Eighth Amendment claims that arose between June 2013 and November 2014, when he was housed in the Upstate Special Housing Unit. (*Id*. at ¶ 4). With the exception of defendant Kemp, all of the named defendants are staff or officials of the New York State Department of Corrections and Community Supervision ("DOCCS"). (Compl. at 1-2[2]). Defendant Kemp is a supervisor with the New York State Office of Mental Health ("OMH"). (Compl. at 2).

Plaintiff's complaint alleges that defendants King, Maynard, Simmons, and Velie

---

[1] Plaintiff is currently confined at the Southport Correctional Facility. (Dkt. No. 86).

[2] Unless otherwise noted, all page references are to the pagination in the CM/ECF system.

failed to protect plaintiff during an altercation with his cellmate on June 12, 2013. (Compl. at 9).  Plaintiff further alleges that defendant Lamare used excessive force when escorting plaintiff back to his cell on June 13, 2013, and that defendants Winston and Southworth failed to intervene when plaintiff's cellmate attacked him immediately upon his return. (Compl. at 14-16).  Plaintiff claims that defendant Lipka was responsible for inciting these incidents by encouraging plaintiff's cellmate to attack him. (Compl. at 10).  He also alleges that defendant MacWilliams used excessive force against him on August 1, 2013, when he jammed his baton into plaintiff's midsection. (Compl. at 27).

Plaintiff claims that his mistreatment by Upstate staff continued in 2014.  He alleges that defendant Velie tried to incite a physical confrontation between plaintiff and his cellmate on August 29, 2014,  and then failed to protect plaintiff when the altercation occurred. (Compl. at 45-47).  He raises a similar failure to protect claim against defendants Bond and Velie in connection with an altercation with another cellmate on November 3, 2014. (Compl. at 55).

Plaintiff claims that he repeatedly expressed legitimate safety concerns about all of these incidents to multiple individuals, including defendants Bell, Gravlin, Laramay, McIntosh, Oropallo, Phillips, Zerniak, and Kemp, but was denied protective custody or any other intervention. (Compl. at 14-17, 50, 56, 58, 71).  He also claims that defendants King, Lipka, MacWilliams, Phillips, Simmons, Velie, and Williams intentionally housed him with gang members, even though they knew that other members of that gang had previously attacked him. (Compl. at 31).

7

## IV.    Exhaustion of Administrative Remedies

### A.    Legal Standards

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action.  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim.  *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002).  Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings.  *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004).  As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements.  *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules.  *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court.  548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process.  The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC").  N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b).  An adverse decision of the IGRC may be appealed to the Superintendent of the Facility.  *Id*. § 701.5(c).  Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC").  *Id*. § 701.5(d).  The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance."  *Id*. § 701.3(a) (Inmate's Responsibility).  There is also a special section for complaints of harassment.  *Id*. § 701.8.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies.  *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004).  The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement.  *Id.*

However, the Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857 (June 6, 2016).  "'[M]andatory exhaustion statutes like the

9

PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, No. 15-3336-pr, 2016 WL 4572321, at *2 (2d Cir. Sept. 1, 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857).  Although *Ross* did away with the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid.  The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability.  *Ross*, __ U.S. at __, 136 S. Ct. at 1858.  Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id.; see also Riles*, 2016 WL 4572321 at *2.  An administrative procedure is "unavailable" when

> (1) "it operates a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is "so opaque that is [sic] becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Riles, supra* (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1859-60).

In *Ross*, the Supreme Court gave examples of the circumstances under which each of the above would apply.  *Ross*, __ U.S. at __, 136 S. Ct. at 1859-60.  The first circumstance listed above involves a case in which the relevant "administrative procedure" lacks the authority to provide "any" relief.  *Id.* at 1859.  The second example is when the administrative procedure "exists," but is so complicated or "opaque" that no ordinary prisoner could "discern or navigate it." *Id.*  Finally, administrative remedies are not available if prison administrators prevent inmates from

taking advantage of the grievance process by misleading or threatening them, preventing their use of the administrative procedure. *Id.* at 1860.

### B.    Application

#### 1.    All Defendants Except Kemp

Defendants argue that plaintiff failed to exhaust the DOCCS administrative grievance process for any of the causes of action in his complaint. (Dkt. No. 170, Def. Mem. of Law, at 5-19).  Plaintiff argues in opposition to the summary judgment motion that, even if he did not meet all of the technical requirements for an individual claim, the court should take all of the grievances and assorted other complaints that plaintiff filed during his confinement at Upstate into consideration, and find that defendants were sufficiently put on notice about the general unconstitutional behavior of DOCCS employees. (Pl.'s Mem. of Law, at 16-17, ¶ 44-46).

In support of their motion, defendants have filed the declarations of Jeffrey Hale, the Assistant Director of the Inmate Grievance Program ("IGP") for DOCCS (Dkt. No. 169-7, "Hale Decl."), and of Donna Wilcox, the IGP Supervisor at Upstate. (Dkt No. 169-2, "Wilcox Decl.").  Mr. Hale states that the DOCCS records reflect that Upstate had a "fully functioning inmate grievance process available," and that Upstate inmates had "full access to the process by which to appeal to CORC from facility-level grievance determinations" during the relevant time period of June 2013 to November 2014. (Hale Decl. ¶ 15).  Mr. Hale further states that he examined the CORC records for "determinations upon grievance appeals brought by [plaintiff]." (*Id*. ¶ 16).  A copy of the computer print-out listing this information is attached as Exhibit A to the Hale

11

Declaration. The records show that plaintiff filed several grievance appeals to the CORC during the relevant period. (Hale Decl. ¶ 15 & Dkt. No. 169-8, "Hale Decl., Ex. A").

In her declaration, Donna Wilcox asserts that she supervises the IGP program at Upstate and is familiar with the processing and recordkeeping associated with inmate grievances at the facility. (Wilcox Decl. ¶¶ 3, 10). Ms. Wilcox also searched the records maintained by the Upstate IGP office to determine if plaintiff filed any grievances regarding the claims raised in his complaint, and found none. (*Id*. ¶¶ 14-15). Ms. Wilcox included the Inmate Grievance Report that formed the basis for her conclusions as Exhibit A to her declaration. (Dkt. No. 169-3, "Wilcox Decl., Ex. A").

As set forth below, this court agrees with the conclusions of Hale and Wilcox that plaintiff failed to complete the DOCCS grievance process in connection with any of his claims in this proceeding. Therefore, I recommend that summary judgment be granted on exhaustion grounds for the following defendants: Bell, Bond, Gravlin, King, Lamare, Laramay, Lipka, MacWilliams, Maynard, McIntosh, Oropallo, Phillips, Simmons, Southworth, Velie, Williams, Winston, and Zerniak.

> **a.    The grievances that plaintiff fully exhausted between June 2013 and November 2014 did not provide Upstate notice regarding any of the claims in his November 19, 2014 complaint.**

Plaintiff filed thirteen grievances between June 2013 and November 2014. (Wilcox Decl., Ex. A, at 3). He completed the three-tiered exhaustion process for four of those grievances prior to filing this complaint. (*Id*.) Several of these grievances

allege staff misconduct that are unrelated to this proceeding.  For example, Grievance No. UST-52240-13, filed on July 15, 2013, claims that correctional officers improperly confiscated items from plaintiff's cell during a search. (Dkt. No. 169-10, "Hale Decl., Ex. C.").  Another grievance, numbered UST-52562-13, alleges that a correctional officer threw envelopes in his face. (Hale Decl., Ex. A at 6).  A third grievance, UST-54497-14, is dated July 9, 2014, and raises a general contention that a state court order required him to be placed in protective custody.[3] (*Id*.).  This grievance alleges that plaintiff's life is in jeopardy but does not mention any of the incidents alleged in the complaint. (Dkt. No. 192-3, at 116).

Plaintiff's fourth exhausted grievance, No. UST-52421-13, was filed on August 9, 2013.  Plaintiff alleged that defendant Williams and two other correctional officers[4] would "continually encourage for inmates to attack me and then have me housed in those areas." (Dkt. No. 169-6, "Wilcox Decl., Ex. D" at 6).  Plaintiff did not allege that he was actually housed with these threatening inmates.  Rather, he was "being verbally threatened with physical injury by several unknown inmates housed around me . . . ." (*Id*. at 5).

---

[3] As part of plaintiff's response to this motion, he included a copy of this purported state court order, and requested that it be reviewed *in camera*. (Dkt. Nos. 192-4 and 193-1, at 1-20). The document is a July 24, 2007 order by Nassau County Court Judge Jeffrey S. Brown, related to a Huntley-Wade hearing, a preliminary state criminal court proceeding held to determine whether plaintiff's statements to police could be introduced at his trial.  Given the public nature of the document, this court finds that *in camera* review is unnecessary.  The court also notes that the order does not reference any requirement that plaintiff be placed in protective custody.

[4] The other two correctional officers named in the grievance are not currently parties to this proceeding.

Although a grievant is not required to identify the parties against whom he is grieving, he is required to "provide a specific description of the problem." *Espinal v. Goord*, 558 F.3d 119, 127 (2d Cir. 2009) (citing N.Y. Comp. Codes R. & Regs., tit. 7 § 701.7(a)(1)). The PLRA's exhaustion requirement requires that prison officials be afforded the time and opportunity to address a complaint internally. "In order to exhaust . . . inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson*, 380 F.3d at 697 (finding the PLRA exhaustion requirement was "not dissimilar to the rules of notice pleading"). Therefore, the question for the court here is "whether [the] plaintiff's grievance sufficiently alerted the prison officials that he was alleging some wrongdoing beyond that alleged against the individual or individuals specifically named in the grievance." *Peele v. Donah*, Case No. 9:15-CV-317 (GTS/TWD), 2016 WL 4400473, at *5 (N.D.N.Y. June 14, 2016) (citation omitted).

Based upon its review of Grievance No. UST-52421-13, this court cannot conclude that plaintiff provided sufficient notice about the nature of any of the claims in plaintiff's November 19, 2014 complaint. In his April 17, 2015 Decision and Order, Judge Kahn distinguished between the general safety risk that is inherent when housed in a maximum security prison with violent offenders, and the more specific risk of violence when housed with members of a rival gang. (Dkt. No. 14, at 28). Judge Kahn found plaintiff's specific allegation in his complaint that defendant Williams and several other defendants knowingly housed plaintiff with gang members and "left him to be compelled into fights through attacks by cell mates" was sufficient to state an

Eighth Amendment claim. (*Id*.).  That is the only claim that bears any similarity to the allegations in UST-52421-13.

Although plaintiff expressed safety concerns in his August 9, 2013 grievance, he lacked the specificity of the housing allegations in the complaint.  Plaintiff never mentioned any fear of gang members in his grievance. (Wilcox Decl., Ex. D, at 5-6). Plaintiff  admitted that his current housing situation was safe, but he expressed fear that unknown inmates housed around him posed a threat. (*Id*. at 6).  Upstate staff interviewed plaintiff regarding his grievance, but plaintiff did not allege that he had ever been intentionally housed with gang members. (*Id*. at 9).  None of plaintiff's administrative appeals of this grievance alleged that any correctional officers had knowingly forced plaintiff to share a cell with gang members who posed a recognized safety risk. (*Id*. at 4, 7; Compl. at 31).  Plaintiff never provided any additional details, such as the alleged dates of any incidents, that might have prompted further investigation into the allegations.

For the reasons set forth above, UST-52421-13 did not provide Upstate officials with sufficient notice of any of the claims found in his complaint, including his claim that several defendants intentionally housed him with gang members.  Therefore, plaintiff's completion of the administrative appeals process for this grievance did not exhaust any of the claims found in his complaint.

      **b.**    **Plaintiff failed to complete the grievance process for certain claims prior to filing the November 19, 2014 complaint.**

Three of the thirteen grievances that plaintiff filed between June 2013 and

November 2014 appear to address events similar to those in his complaint.  In all three instances, however, plaintiff did not complete the three-tier inmate grievance process prior to filing the complaint, and thus failed to satisfy the PLRA exhaustion requirement.  These grievances are addressed below in chronological order.

Plaintiff filed Grievance No. UST-52508-13 on June 24, 2013. (Dkt. No. 169-5, Wilcox Decl., Ex. C at 3).  He alleged that defendants Simmons and Velie incited his cellmate to attack him on June 12, 2013, and failed to intervene once the attack occurred. (*Id*.).  He further alleged that defendant Maynard used excessive force when escorting plaintiff back to his cell on June 13, 2013, and that other unidentified correctional officers failed to intervene when he was also immediately attacked by his cellmate. (*Id*. at 4-5).  These allegations are very similar to those raised in the complaint against defendants Simmons,Velie, Maynard, Oropallo, King, Lipka, Lamare, Winston, and Southworth. (Compl. at 9-10, 14-16).  Plaintiff appealed the initial denial of his grievance to the Superintendent on August 22, 2013, and was denied on September 11, 2013. (Wilcox Decl., Ex. C at 2).  The record does not show any appeal of the Superintendent's determination to CORC. (Wilcox Decl., Ex. A at 3).  Therefore, plaintiff did not exhaust his administrative remedies as to these claims.

In his complaint, plaintiff alleged that defendant Velie encouraged plaintiff's cellmate to attack him on August 29, 2014. (Compl. at 45-47).  Plaintiff filed Grievance No. UST-54725-14 on September 3, 2014. (Wilcox Decl., Ex. A at 3).  Neither party has provided a copy of this grievance. The record contains a summary that lists the grievance as plaintiff "[d]oesn't want to be double celled." (*Id*.).  The timing of this

grievance suggests that it could have been motivated by the alleged August 29, 2014 incident.[5] Plaintiff appealed this grievance to the Superintendent, who denied it on September 30, 2014. (*Id*). Plaintiff then filed an appeal of the Superintendent's denial to CORC on October 24, 2014. (*Id*). CORC ultimately denied plaintiff's appeal on January 28, 2015.

While the CORC appeal on Grievance No. UST-54725-14 was still pending, plaintiff commenced this federal action on November 19, 2014. (Dkt. No. 1). In order to exhaust administrative remedies, plaintiff was required to receive a response from CORC prior to filing his federal lawsuit. *See Torres v. Carry*, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009) (no exhaustion where inmate's appeal was pending review by CORC at the time that the complaint was filed). Therefore, even if Grievance No. UST-54725-14 had provided sufficient notice as to his claim against defendant Velie, plaintiff still failed to exhaust in accordance with the PLRA.

Plaintiff filed Grievance No. UST-55062-14 on November 3, 2014. (Wilcox Decl., Ex. B at 3). He alleged that several correctional officers, including defendants Bell, McIntosh, Oropallo, and Zerniak, had denied multiple requests for protective custody. (*Id*.) Although the timing of these incidents is unclear, the allegations are similar to plaintiff's claims in the complaint that his numerous requests for protective custody had been ignored. (Compl. at 14-17, 50, 56, 58, 71). Plaintiff appealed the initial denial of this grievance to the Superintendent on November 3, 2014. (Wilcox

---

[5] There is nothing in the record that would allow this court to determine whether or not this grievance was related to the alleged August 29, 2014 incident involving defendant Velie.

17

Decl., Ex. B at 2). However, plaintiff did not file an appeal to CORC after the Superintendent denied his grievance on November 25, 2014. (Wilcox Decl., Ex. A at 3). Therefore, plaintiff did not exhaust his administrative remedies as to these allegations.

> **c.    Plaintiff did not file any grievances for the remaining claims in the complaint.**

For the remainder of plaintiff's claims, there is no evidence that plaintiff filed any grievances at all. This includes plaintiff's claims that defendant MacWilliams used excessive force against him on August 1, 2014; that defendant Bond failed to protect plaintiff from a cellmate attack on November 3, 2014; that defendant Williams intentionally housed plaintiff with gang members; and that defendants Laramay, Lipka, and King intentionally subjected plaintiff to dangerous housing conditions. (Compl. at 27, 31, 45-47). For these claims, it is clear that plaintiff did not exhaust his administrative remedies.

> **d.    Plaintiff has not demonstrated that the grievance process was unavailable.**

Plaintiff has expressed his familiarity with the grievance process at Upstate, and estimates that he had filed 131 grievances between January 2009 and May 2016. (Pl.'s Mem. of Law at 73, ¶ 13). Despite the high number of grievances, plaintiff does not argue that he exhausted the grievance process for any of the individual claims in his complaint. Instead, plaintiff offers a number of reasons why his failure to exhaust administrative remedies should be excused: staff intimidated him from using the grievance process; plaintiff's prior grievances describing similar incidents provided

adequate notice to the facility of his safety concerns; and his complaints to third parties outside the grievance process were sufficient to exhaust his administrative remedies. (Pl.'s Mem. of Law at 5-14).  None of these arguments is persuasive.

Plaintiff has not provided any evidence to support his argument that the grievance process was unavailable to him prior to filing his complaint.  As described above, plaintiff filed a total of thirteen grievances between June 2013 and November 2014, and completed the three-tiered grievance process for five of them.  Plaintiff's complaint was dated November 14, 2014, postmarked November 17, 2014, and filed on November 19, 2014. (Dkt. No. 1-1).  The only record evidence suggesting that administrative grievance remedies were ever unavailable is found in a letter from plaintiff to the New York State Commission on Corrections ("NYSCOC"). (Dkt. No. 194-1, at 10).  In this November 19, 2014 letter, plaintiff alleges that, on that same date, defendant Velie told him, ". . . I guarantee you White you're [sic] complaints to IGRC will cause you to have problems." (*Id*.)  Because the alleged threat occurred five days after plaintiff filed his federal complaint, it has no bearing on the exhaustion analysis for the claims raised in this proceeding.

This court also finds no support for plaintiff's alternative argument, that defendants were estopped from raising exhaustion as an affirmative defense because he had exhausted previous grievances that raised similar issues at Upstate.[6]  Plaintiff

---

[6] In previous litigation before this court, plaintiff unsuccessfully argued that his extensive grievance history was a special circumstance that excused his failure to exhaust his administrative remedies, because prison staff should have been aware of his general safety concerns.  *See White v Williams*, No. 9:12-CV-1892 (NAM/ATB), 2016 WL 1237712, at *7 (N.D.N.Y. Jan. 11, 2016) (Rep't-Rec), *adopted,* 2016 WL 1239263 at *1 (Mar. 29, 2016).

argues that any additional grievances raising similar issues would have been redundant, and that Upstate officials considered his remedies as exhausted "for all time" so long as he was housed at Upstate. (Pl.'s Mem. of Law, at 5-10, ¶¶ 13-29). To support this claim, plaintiff cited an undated 2012 IGP Investigation report that states,

> The grievant has already addressed a grievance against his assigned corrections counselor which has been coded a 49 and is currently being addressed under UST-50204-12. **There is no need to file multiple grievances about the same issue** . . . .

> The grievant's allegations are general and provide no reasonable foundation for further investigation. Lacking are the actual dates, times, places, the nature of any words exchanged. He states that these allegations have been ongoing for the past 3 ½ years. The grievant should attempt to address one incident which occurred within the past 21 days as directed within Directive #4040.

(Dkt. No. 193-1, at 50) (emphasis supplied).

Plaintiff relies on a single sentence in that report (in bold above), to argue that defendants discouraged him from filing redundant grievances, and are therefore estopped from raising the exhaustion defense. (Pl.'s Counter Statement of Material Facts at 8, ¶ 22). This interpretation ignores the context of that sentence. The IGP report was issued after plaintiff filed duplicative grievances related to the exact same incident. Plaintiff's interpretation of the IGP report is also legally flawed. The fact that plaintiff has previously raised generalized personal safety concerns regarding unidentified inmates or Upstate staff does not excuse him from exhausting all future

---

Because the "special circumstances" exception is not applicable after *Ross*, this court will read plaintiff's argument in the most favorable light and treat it as one for estoppel.

claims that raise similar issues. *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) ("generalized complaints regarding the conditions of an inmate's confinement" do not suffice to shortcut the administrative remedy process).

Plaintiff's final argument on this issue is that his letters to third party agencies, including the NYSCOC, the New York State Attorney General, the New York State Police, and the Franklin County District Attorney, were a valid alternate means of exhausting his administrative remedies. (Pl.'s Counter Statement of Material Facts at 17, ¶ 62; Dkt. No. 192-3, at 5-30). This argument is unpersuasive, because it seeks the type of "special circumstance" exception to exhaustion that is no longer available after *Ross*. However, even prior to *Ross*, such correspondence with third parties did not excuse non-compliance with the DOCCS grievance requirements, particularly where an inmate was familiar with the administrative requirements.[7] *McCloud v. Tureglio*, No. 09:07-CV-650 (NAM/GHL), 2008 WL 1772305, at *15 (N.D.N.Y. April 15, 2008) (complaint letters to prison officials did not satisfy exhaustion of grievance process); *Hall v. Bradley*, No. 12-CV-6202, 2015 WL 3964897, at *5 (W.D.N.Y. June 29, 2015) (neither letters to other DOCCS officials, nor conversations with prison officials about the incident satisfy the exhaustion requirement).

### 2.    Defendant Kemp

As previously discussed, it is defendants' burden to prove that plaintiff failed to

---

[7] Plaintiff raised this argument in previous cases in the Northern District of New York that were decided prior to the Supreme Court's decision in *Ross*. Even under the *Hemphill* standard, correspondence with outside agencies was not an adequate substitute for the DOCCS grievance process. *See White v Williams*, No. 9:12-CV-1892 (GLS/ATB), 2016 WL 1237712, at *7 (N.D.N.Y. Jan. 11, 2016) (Rep't-Rec), *adopted*, 2016 WL 1239262 at *1 (Mar. 29, 2016).

exhaust his administrative remedies.  In defendants' motion for summary judgment,

defense counsel argued that the claim against defendant Kemp should be dismissed for

failure to exhaust. (Dkt. No. 170, Def. Mem. of Law, at 11).  In his response to

defendants' motion, plaintiff argues that defendant Kemp is an OMH employee, who is

not subject to the DOCCS grievance process. (Pl.'s Counter Statement of Material Facts

at 3, ¶ 7).  Thus, plaintiff argues that he was not required to exhaust the three-tiered

grievance process as to defendant Kemp.

Plaintiff's argument has merit.  *See*  N.Y. Comp. Codes R. & Regs., tit. 7 §

701.3(f) ("Any policy, regulation or rule of an outside agency (e.g., the division of

parole, immigration and customs enforcement, the office of mental health, etc.) or

action taken by an entity not under the supervision of the commissioner is not within

the jurisdiction of the IGP."); *see also McQuilkin v. Central New York Psychiatric C'tr*,

Case No. 9:08-CV-975 (TJM/DEP), 2010 WL 3765847, at *9 (N.D.N.Y. Aug. 27,

2010) (denying summary judgment on exhaustion grounds when DOCCS had

previously advised inmate that OMH employees were not subject to the grievance

process); *Christian v. Goord*, No. 9:03-CV-901 (FJS), 2006 WL 1459805, at *4

(N.D.N.Y. 2006) (". . . the court would also point out that the response to the grievance

indicates that OMH is 'outside' of DOCS, and thus, the matter would not be

'grievable.'").  Defense counsel did not address this issue in their reply.  Instead,

defense counsel argued that there were sufficient other grounds to grant summary

judgment on behalf of defendant Kemp.  Where questions of fact exist as to exhaustion,

summary judgment is not appropriate.  Therefore, this court recommends a finding that

defendant Kemp has not satisfied his burden of proof as to exhaustion.[8]

## V.    Personal Involvement (Defendant Kemp Only)

### A.    Legal Standards

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[8] Neither party addressed what steps were necessary to administratively exhaust a claim against an OMH employee under the PLRA. Therefore, to be clear, this court is not recommending a finding that plaintiff actually exhausted his administrative remedies with regards to defendant Kemp, or that OMH employees are exempt from the PLRA exhaustion requirements.

Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*. *Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

### B.    Application

The only claim remaining against defendant Kemp is that he failed to grant plainitff's request for protective custody, or otherwise intervene in favor of that request. (Compl. at 15). Although defendant Kemp is described as an OMH Supervisor in the complaint, plaintiff is not alleging respondeat superior liability. Instead, plaintiff argues that defendant Kemp, who learned of plaintiff's safety concerns during a mental health evaluation, could have persuaded the Upstate Superintendent to move plaintiff into protective custody. (Pl.'s Mem. of Law, at 75, ¶ 21).

As part of their motion, defendants explained that the decision to deny protective custody to an inmate is not made by mental health counselors/therapists such as

defendant Kemp. (Dominic Decl. ¶¶ 14, 17).  Rather, the decision is made by the

Upstate Superintendent, following an internal investigation. (*Id*. at ¶ 14).  The record

shows that plaintiff had initiated this formal approval process in the past, and was

denied protective custody. (Dkt. No. 192-3, at 105).  Plaintiff has not alleged that

defendant Kemp had any actual authority to place him into protective custody or

otherwise change his housing assignment.

Because defendant Kemp had no formal or de facto power to grant or deny

plaintiff's request for protective custody, he was not personally involved in the

determination.  *See Smart v. Goord*, 441 F. Supp.3d 631, (S.D.N.Y. 2006)(no personal

involvement for individuals who recommended continued confinement in protective

custody, but did not make final determination); *Quezada v. Roy*, No. 14-CIV-4056

(CM), 2015 WL 5542277, at *9-10 (S.D.N.Y. Sept. 18, 2005) (correctional officers

who did not determine plaintiff's cell assignment did not have sufficient personal

involvement to be liable for protective custody claim).  Therefore, this court

recommends that summary judgment be granted to defendant Kemp, for lack of

personal involvement.[9]

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion for additional discovery is **DENIED**, and it

---

[9] Plaintiff had unsuccessfully raised a similar claim in prior litigation.  *See White v. Williams*, No. 9:12-CV-1775 (NAM/DJS), 2016 WL 4006461, at *10 (N.D.N.Y. June 22, 2016) (Rep't-Rec); *adopted,* 2016 WL 4005849, at *1 (N.D.N.Y. July 25, 2016) ("Plaintiff's claim for denial of protective custody suffers from a serious fatal flaw, namely, he has named parties who had no personal involvement in the decision to house Plaintiff in a double cell or to put him in protective custody.").

is further

**ORDERED**, that plaintiff's motion for in camera review of certain exhibits is **DENIED**, and it is further

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 169) be **GRANTED,** and that all of plaintiff's claims be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated:     May 4, 2017

Hon. Andrew T. Baxter
U.S. Magistrate Judge